UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DANIEL S.,[1]

Plaintiff, Case # 23-CV-6276-FPG

v. DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

## INTRODUCTION

Plaintiff Daniel S. brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") that denied his application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 4, 7. For the reasons below, the Commissioner's motion is GRANTED, Plaintiff's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

On July 26, 2021, Plaintiff protectively applied for SSI benefits with the Social Security Administration ("the SSA"), alleging disability beginning on June 14, 2002. Tr.[2] 269. The claim was initially denied on March 24, 2022, Tr. 167, and upon reconsideration on July 1, 2022, Tr. 179. Thereafter, he filed a written request for a hearing that was received on July 26, 2022. Tr. 193. The hearing was held on January 17, 2023 by telephone in front of Administrative Law Judge

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 5.

Jennifer Gale Smith ("the ALJ"). Tr. 16. The ALJ then issued a decision in February 2023 finding that Plaintiff was not disabled. Tr. 16-38. Plaintiff requested review by the Appeals Council, but the request was denied in March 2023. Tr. 1. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. *Id.* If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." *Id.* If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id.* § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 26, 2021, the earliest protective filing date. Tr. 19. At step two, the ALJ found that Plaintiff had severe impairments of asthma, allergies, anxiety disorder, and autism disorder. *Id.* At step three, the ALJ concluded that none of Plaintiff's impairments met or medically equaled one of the impairments listed in Appendix 1 of Subpart P of Regulation No. 4. Tr. 21.

Next, the ALJ found that Plaintiff had the RFC to perform the exertional demands of work at all exertional limitations with some non-exertional limits, such as no working with nuts; no concentrated exposure to respiratory irritants; can understand, remember, and carry out simple instructions; can use judgment to make simple work-related decisions, should work in a job with occasional changes in routine; cannot perform work requiring a specific production rate; work should not require more than short, simple interactions with coworkers and supervisors; should have occasional contact with coworkers and supervisors; and should have no public contact. Tr. 23. At step four, the ALJ determined that Plaintiff had no past relevant work. Tr. 36. At step five, the ALJ found that, given his age, education, work experience (or lack thereof), and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 36-38. Accordingly, the ALJ found that Plaintiff is not disabled. Tr. 38.

### II. Analysis

Plaintiff argues that remand is warranted because the ALJ (1) failed to develop the full mental health record with all of Plaintiff's treatment notes; (2) ignored the evidence in the record and improperly mischaracterized and hyper-focused on Plaintiff's daily living to discredit

Plaintiff's autism and associated limitations; and (3) substituted her own lay opinion for that of medical opinion evidence and in doing so, failed to identify substantial evidence that supported the RFC. ECF No. 4-1 at 1. The Court discusses each of the Plaintiff's arguments below.

**a. Duty to Develop the Record**

First, Plaintiff argues that remand is warranted because the ALJ did not fulfill her duty to develop the full mental health record in this case. ECF No. 4-1 at 11. Specifically, Plaintiff faults the ALJ for only including two counseling notes in the record even though Licensed Mental Health Counselor ("LMHC") Kristofer Rounsville indicated he began treating Plaintiff in August 2022 and saw Plaintiff every two to three weeks since then. *Id.*

"[T]he ALJ, unlike a judge in a trial, must herself affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (internal quotation marks and brackets omitted). This duty "exists even when . . . the claimant is represented by counsel." *Id.* Thus, generally, an ALJ should seek additional evidence or clarification "'when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques.'" *Jason C. v. Berryhill*, No. 17-CV-01106, 2019 WL 1409804, *5 (N.D.N.Y. Mar. 28, 2019) (quoting *Janes v. Colvin*, No. 15-CV-1518, 2017 WL 972110, at *4 (N.D.N.Y. Mar. 10, 2017), *aff'd* 710 F. App'x 33 (2d Cir. 2018) (summary order). However, the ALJ is not required to further develop the record where all evidence of record is consistent and sufficient, such that the ALJ can make his determination without additional evidence. *See Hernandez v. Comm'r of Soc. Sec.*, No. 13-CV-959, 2015 WL 275819, *2 (N.D.N.Y. Jan. 22, 2015). "The mere absence of some medical records is insufficient to show that the ALJ failed in her duty or that reversible error occurred." *Jason C.*, 2019 WL

1409804, at *5 (internal quotations and citation omitted). Further, an ALJ has taken reasonable steps to complete the record where she specifically asks a plaintiff's attorney if the records before him are complete, and the attorney answers affirmatively. *See Jennifer M. v. O'Malley*, No. 23-CV-494, 2024 WL 5378976, at *5 (N.D.N.Y. July 23, 2024) (collecting cases).

Here, Plaintiff argues that the ALJ needed to further develop the record, but he does not explain why the ALJ would be unable to make her RFC determination absent these additional counseling records from LMHC Rounsville. Tr. 11-15. Indeed, during the hearing the ALJ asked if the record was complete, and Plaintiff's attorney stated that the only records they were waiting for were from Persons Center Services. Tr. 110. At the end of the hearing, Plaintiff's attorney requested two weeks to get the additional records. Tr. 140. The ALJ agreed and stated that if more time was needed, to just ask for more time. *Id.* at 140-41. Plaintiff's attorney then submitted treatment records from Jason Elwell, M.D., Tr. 754, and documents from Person Center Services, Tr. 759. In a January 31, 2023 letter, Plaintiff's attorney stated that all records concerning Plaintiff had been submitted and the record may be closed. Tr. 457. As such, the ALJ met her duty to develop the record. *See Dale A.M. v. Comm'r of Soc. Sec.*, 19-CV-1150, 2021 WL 1175160, at *12 (N.D.N.Y. Mar. 29, 2021) ("[A]n ALJ need not take any further steps to develop the record where he [or she] asks a [Plaintiff's] attorney if the records are complete and the attorney responds affirmatively."). Further, the ALJ rendered his RFC determination based on sufficient mental health evidence, including records regarding Plaintiff's mental health from his primary care provider; records involving medication management, counseling sessions, and additional behavioral therapy at Person Center Services; the opinion of consultive examiner Stephen Farmer, Psy.D, and the opinions of State agency medical consultants E. Kamin, Ph.D., and M. D'Ortona, Psy.D. Consequently, remand is not warranted on this basis. Tr. 25, 31, 32.

**b. Activities of Daily Living Argument**

Next, Plaintiff argues that the RFC is unsupported by substantial evidence because "the ALJ ignored evidence in the record and improperly mischaracterized and hyper-focused on Plaintiff's activities of daily living to discredit Plaintiff's autism and associated limitations." ECF No. 4-1 at 16. Specifically, Plaintiff argues that the ALJ (1) cherry-picked the record to downplay Plaintiff's severe mental health impairments, *id.*; and (2) improperly discounted Plaintiff's complaints due to his wide range of activities of daily living, *id.* at 19.

As to Plaintiff's first argument, Plaintiff claims that the ALJ cherry-picked the record to downplay Plaintiff's severe mental health impairments. *Id.* at 16. Cherry-picking can be defined as "inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source." *Artinian v. Berryhill*, No. 16-CV-4404, 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2018). Cherry-picking can "indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both." *Id.* (quoting *Younes v. Colvin*, No. 14-CV-170, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015)). The mere fact that Plaintiff can identify other evidence to support a different conclusion does not entitle him to relief. *Emery S. v. Comm'r of Soc. Sec.*, No. 20-CV-662, 2021 WL 2592363, at *4. If an ALJ's findings are reasonably supported by the record, they "must be given conclusive effect" even if "the administrative record may also adequately support contrary findings on particular issues." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

Here, the ALJ's findings regarding Plaintiff's mental health are reasonably supported by the record. *See Emery S.*, 2021 WL 2592363, at *4. The ALJ does acknowledge Plaintiff's mental health needs throughout her opinion, as discussed above.[3] Tr. 22-23, 25-35. Further, the ALJ

[3] The ALJ relied on records regarding Plaintiff's mental health from his primary care provider; records involving medication management, counseling sessions, and additional behavioral therapy at Person Center Services; and the

adequately explained how she evaluated the mental health evidence in reaching her conclusions. Based on this evidence, as well as more evidence that the Court need not summarize here, the Court concludes that the ALJ did not cherry-pick the record to downplay Plaintiff's severe mental health needs. Rather, the ALJ acknowledged and resolved conflicts in the record to arrive at reasonable factual conclusions. As such, the ALJ's determination was supported by substantial evidence.

In his second argument, Plaintiff argues that the ALJ improperly relied on Plaintiff's wide range of daily living activities to discredit his complaints. ECF No. 4-1 at 19. It is "the Commissioner's regulations [that] expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms." *Coger v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 427, 436 (W.D.N.Y. 2018) (citation omitted); *see* 20 C.F.R. § 404.1529(c)(3)(i). Therefore, it was not improper for the ALJ to consider Plaintiff's daily activities in determining whether Plaintiff has a severe impairment.

"In considering activities of daily living, the issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence." *Coger*, 335 F. Supp. 3d at 436 (internal quotations, brackets, and citation omitted). Here, the ALJ considered Plaintiff's testimony that he engaged in "showering and dressing on a daily basis, cooking meals daily, cleaning daily, sweeping, taking out the trash and recycling, shopping as needed, and attending scheduled medical appointments." Tr. 26 (citations omitted). The ALJ also considered Plaintiff's reports of difficulties doing laundry and managing money without many verbal prompts or assistance. *Id.*

---

opinion of consultive examiner Stephen Farmer, Psy.D, and the opinions of State agency medical consultants E. Kamin, Ph.D., and M. D'Ortona, Psy.D. Tr. 25, 31, 32.

However, the ALJ also noted that Plaintiff acknowledged that he could do laundry, count money, and manage money. *Id.* Additionally, the ALJ cited evidence that Plaintiff is able to travel alone, is an avid runner, successfully completed two years of college to obtain the equivalent of an associate's degree, helped to care for his grandparents while his mother worked outside of the home, read, studied the bible, socialized with friends, participated in online social media, played video games, and composed music. Tr. 27.

These activities are inconsistent with the severity of the symptoms that Plaintiff claimed to suffer from. Tr. 25-26; *see Rusin v. Berryhill*, 726 F. App'x 837, 840 (2d Cir. 2018) (summary order) (severe limitations claimed by the plaintiff were inconsistent with the plaintiff's report that he "cooked simple meals daily, left the house daily, can drive, and shopped for groceries every two weeks"). Additionally, the ALJ noted that none of the medical sources noted any ongoing difficulties with the Plaintiff's personal hygiene or grooming to indicate any chronic difficulty caring for his personal needs, Tr. 26, and that "[g]reater environmental limitations or restrictions are not supported by [Plaintiff's] activities of daily living or other evidence," Tr. 28. Moreover, as the ALJ also observed, Plaintiff graduated from high school, completed two years of college, and mental status exams showed generally intact attention, concentration, and memory skills. Tr. 35. The ALJ therefore concluded that "the frequency and degree for prompts or assistance from others are not supported by [Plaintiff's] engagement in a wide range of activities of daily living." Tr. 26. Since the ALJ relied on Plaintiff's activities of daily living along with objective medical evidence and other evidence as described above, the Court concludes that the ALJ did not improperly rely on Plaintiff's activities of daily living and instead relied on substantial evidence.

Because there is substantial evidence in the record to support the ALJ's finding that Plaintiff does not have a severe impairment or combination of impairments that severely limit his

ability to perform work-related activities at all exertional levels, remand is not warranted on this basis. *See Collins v. Comm'r of Soc. Sec.*, 19-CV-00298, 2020 WL 5742677, at *5-7 (W.D.N.Y. Sept. 24, 2020) (in rejecting the plaintiff's complaints of pain and disabling limitations, the ALJ properly discussed objective medical evidence, treatment and response to treatment, activities of daily living, and medical expert opinion evidence).

For these reasons, the Court concludes that there is no merit to Plaintiff's arguments that the ALJ cherry-picked the record and improperly relied on Plaintiff's wide range of daily living activities to discredit his complaints. Therefore, the Court concludes that remand is not warranted on this basis.

**c. Lay Opinion/Substantial Evidence**

Next, Plaintiff argues that the ALJ's mental RFC determination is not supported by substantial evidence because the ALJ substituted her own lay opinion for that of medical opinion evidence. ECF No. 4-1 at 21. Specifically, Plaintiff argues that the ALJ (1) did not rely on any specific medical opinion in order to formulate the RFC, supplanting the role of a medical expert and rendering a conclusion that is beyond her expertise as a lay person, *id.* at 22-24; and (2) failed to provide a function-by-function analysis of Plaintiff's work capacity, *id.*[4]

So long as the "the evidence of record permits [the Court] to glean the rationale of an ALJ's decision," an ALJ is not required to "mention[] every item of testimony presented to him or [] explain[] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). As discussed above, "[e]ven where the administrative record may also adequately support contrary findings on

[4] To the extent Plaintiff argues that it was unclear how the ALJ reached her specific conclusions in the RFC determination, ECF No. 4-1 at 21, Plaintiff does not specify anything about the RFC determination that was unclear. As such, the remand is not warranted on such a vague argument.

particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Mordean L. v. Comm'r of Soc. Sec.*, No. 19-CV-277, 2020 WL 6886557 at *5 (W.D.N.Y. Nov. 24, 2020) (quoting *Genier*, 606 F.3d at 49). The mere fact that Plaintiff can identify other evidence to support a different conclusion does not entitle him to relief. *Emery S.*, 2021 WL 2592363, at *4.

Plaintiff claims that the RFC was not supported by substantial evidence because the ALJ "did not rely on a medical opinion to formulate the RFC." ECF No. 4-1 at 24. The Court disagrees. "The law is quite settled that a medical opinion is not required to formulate an RFC, as it is an administrative finding, not a medical finding." *Philip M. v. Comm'r of Soc. Sec*, 25-CV-00094, 2026 WL 1279105, at *6 (W.D.N.Y. May 11, 2026). Therefore, where the record contains sufficient information for the ALJ to formulate an RFC supported by substantial evidence, remand is not warranted on the basis that the ALJ did not rely on a medical opinion. *Id.* Here, as discussed above, the ALJ considered that primary symptoms of anxiety and other psychological symptoms appeared to be controlled with periodic medication management, counseling sessions, and additional behavioral therapy. Tr. 25. The ALJ found that Plaintiff could engage in a range of activities that required significant mental demands, Tr. 22., and had an overall positive response to medication management, formal outpatient mental health treatment and similar interventions without the need for more intensive treatment, Tr. 25. Further, the ALJ determined that records showed that Plaintiff was benefitting from mental health counseling and appeared to manage his obsessive compulsive disorder ("OCD") traits and obsession or addictive traits with mental health treatment, and without the need for more intensive treatment. *Id.*

The ALJ found that the record failed to support that Plaintiff had significant mental impairments, given Plaintiff's wide range of activities that he engaged in on a regular and

continuing basis. Tr. 26. From this record, the Court can glean that the ALJ found no support for a restrictive RFC in the mental health domain. Further, in her opinion, the ALJ described the evidence and explained how she used it to craft the RFC. Tr. 31-35. As such, the Court concludes that the RFC was supported by substantial evidence.

To the extent that Plaintiff argues that a function-by-function analysis was required, and remand is necessary without it, ECF No. 4-1 at 24, that argument is similarly unavailing. The Second Circuit has noted that "[w]here an ALJ's analysis. . . regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, . . . remand is not necessary merely because an explicit function-by-function analysis was not performed." *Domm v. Colvin*, 579 F. App'x 27, 29 (2d Cir. 2014) (summary order) (quoting *Cichocki v. Astrue,* 729 F.3d 172, 177 (2d Cir. 2013)). For the same reasons as described above, the Court concludes that the RFC was supported by substantial evidence. Consequently, the ALJ provided an adequate basis for meaningful judicial review and applied the proper legal standard. Thus, remand is not warranted on this basis.

**CONCLUSION**

For all the reasons stated, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 4) is DENIED, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 7) is GRANTED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.
Dated: September 25, 2026
Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York